**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VALERIE BELL,                                              Case No. 1:12-cv-483

          Plaintiff,                                    Spiegel, J.
                                                          Bowman, M.J.

   v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

         Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Valerie Bell filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents six claims of error for this Court's review.  For the reasons explained below, I conclude that this case should be AFFIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

In January 2004, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging a disability onset date of November 30, 2002 due to physical and mental physical impairments.[1]  (Tr. 123-25).  After an

---

[1]Plaintiff previously filed an application for SSI in November 1994.  (*See* Tr. 50, citing Tr. 32, 42 ). The claim was denied initially and upon reconsideration, and then proceeded to an administrative hearing.  (Tr. 32).  An administrative decision finding Plaintiff not disabled was issued on May 25, 1996.  (Tr. 32-38).  The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings.  (Tr. 42).  Another unfavorable administrative decision was issued on March 18, 1998.  (Tr. 42-44).  There is no evidence that Plaintiff appealed the March 18, 1998 decision, therefore, the decision became the final decision of the Commissioner.

administrative hearing, an administrative law judge (ALJ) issued a decision finding Plaintiff not disabled from November 30, 2002, her alleged disability onset date, through February 7, 2007, the date of the decision. (Tr. 50-59). Thereafter, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (Tr. 108-10).

Upon remand, the ALJ held another hearing in April 2009. (Tr. 1133-68). At the hearing, ALJ Deborah Smith heard testimony from Plaintiff and George Parsons, an impartial vocational expert. On June 16, 2011, ALJ Smith denied Plaintiff's application in a written decision. (Tr.18).

The record on which the ALJ's decision was based reflects that Plaintiff has an eleventh grade education and has past relevant work as a cashier. Plaintiff was born in 1965 and was 37 years old on her alleged onset date.

Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "history of right elbow epicondylitis, history of left rotator cuff tear, obesity, recently developed lower lumbar facet arthropathy, left knee injury in April 2007 with corrective surgery, and a left foot fracture in 2008." (Tr. 21).

The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform sedentary work, with the following limitations:

> she can climb stairs only occasionally; she cannot climb ladders, ropes, or scaffolds; she can reach overhead only occasionally, she cannot use foot controls; she has a slight limitation of understanding, remembering, and carrying out simple or complex job instructions, and of making judgments on simple or complex work-related decisions, but she can generally function well in these areas; and she has more than a slight limitation of

2

interacting appropriately with the public, supervisors, and coworkers, and responding appropriately to usual work settings or changes in a routine work setting, but is still able to function satisfactorily in these areas.

(Tr. 23).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is able to perform her past relevant work as a cashier, as well as other jobs in the national economy, including security system monitor, stock clerk, hand packer and general office clerk. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. (Tr. 28).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) denying Plaintiff's application as a matter of law when the ALJ's findings compel an award of benefits; (2) failing to give deference to the findings of Dr. Dreyer; (3) improperly evaluating Plaintiff's credibility; (4) relying on the opinions of the non-examining state agency medical advisor; (5) failing to resolve the conflict between the testimony of the vocational expert and the information contained in the Dictionary of Occupational Titles (DOT); and (6) failing to consider the effects of Plaintiff's obesity on her musculoskeletal conditions. Upon careful review, the undersigned finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ erred in not adopting the opinions of consultative

examiners Dr. Dreyer and Dr. Deardorff and further erred and in relying on the findings of the state agency medical advisor and Dr. Eggerman, a consultative examiner. Each assertion will be addressed in turn.

### A. Dr. Deardorf and Dr. Dreyer

Plaintiff argues that the ALJ did not provide valid reasons for rejecting the opinions of Dr. Dreyer and Dr. Deardorff. (Doc. 13 at 13). Specifically, Plaintiff argues that the ALJ disregarded their opinions because they were associated in the same office. (Doc. 13 at 13). Plaintiff further notes that had the opinion of Dr. Dreyer been credited, a finding of disability is warranted. Notably, at the hearing, Dr. Parsons testified that the medical opinions of Dr. Dreyer would prevent Plaintiff from working any of the jobs that Dr. Parsons identified in his testimony, including past relevant work. (Tr. 1164). He testified further that there is no work that claimant could do if Dr. Dreyer opinions are credited. *Id.*

The record indicates that examining psychologists Dr. Dreyer and Dr. Deardorff examined Plaintiff in February 2003 and March 2004, respectively, at the request of the state agency. (Tr. 359-364). Both psychologists assessed Plaintiff with a Global Assessment Functioning (GAF) score of 45, indicated that she would have difficulties interacting with others, following simple instructions, and handing stress. (Tr. 364). The ALJ gave their opinions little weight because she determined that Plaintiff was able to function at a higher level than indicated in the doctors' opinions. (Tr. 25). Specifically, the ALJ pointed out that Plaintiff was able to care for her minor child, babysit her grandchildren, and engage in social activities during the time that she was evaluated by Dr. Dreyer. (Tr. 25). The ALJ also noted that Plaintiff was able to work a full-time job, at the substantial gainful activity level. (Tr. 25). Therefore, the ALJ concluded that

Plaintiff's activities were inconsistent with the doctors' assessments. (Tr. 25). Upon careful review, the undersigned finds that the ALJ properly evaluated the opinions of Dr. Deardorff and Dr. Dreyer.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009 WL 648597, *13 (S.D. Ohio Mar.11, 2009). Such is permissible "because the Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Id.* (citing Social Security Ruling 96-6p). Opinions

offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)).   Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight." *Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

In the present case, the ALJ's decision indicates that he properly applied the factors outlined in 20 C.F.R. § 404.1527(d)(2).  The ALJ determined that Dr. Deardorff's and Dr. Dreyers' opinions were not an accurate representation of Plaintiff's functioning. (Tr. 25).  As the ALJ pointed out, Plaintiff's activities of daily living, which included caring for her minor son, babysitting her grandchildren, and playing pool on a weekly basis, were inconsistent with Dr. Dreyer's and Dr. Deardorff's conclusions that Plaintiff had difficulties interacting with others.  (Tr. 25, referring Tr. 164, 167, 332).  The ALJ also pointed out that even though the vocational expert testified that Dr. Dreyer's assessment would render Plaintiff unable to work, that Plaintiff was working at the time she was evaluated by Dr. Dreyer.  (Tr. 25).  In March 2004, Plaintiff told Dr. Dreyer that she had not worked since 2001. (Tr. 361). But the ALJ correctly pointed out that Plaintiff was working at the time she was evaluated by Dr. Dreyer, and even earned substantial gainful activity in 2004 and 2005.  (Tr. 25, citing Tr. 139).

The undersigned notes that Plaintiff further argues that the ALJ should have afforded deference to the findings of Drs. Deardorff and Dreyer because the GAF scores of 45 they assigned at the time of their examination, were consistent with the GAF score of 40 assigned to Plaintiff by Dr. David in December of 2005.  (Tr. 534).  The GAF Scale reports an individual's overall level of functioning.  A GAF score of 41–50 indicates that a person has serious symptoms (e.g., suicidal ideation, severe

obsessional rituals, frequent shoplifting) or serious impairment in social or occupational functioning (e.g., no friends and unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, 34 (2000).  Despite Plaintiff's focus on GAF scores in the record at issue, "the Commissioner 'has declined to endorse the [GAF] score for "use in the Social Security and SSI disability programs," and has indicated that [GAF] scores have no "direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411 (6th Cir.2006) (additional quotations omitted)

### B.   *Dr. Melvin and Dr. Eggerman*

Plaintiff further asserts that the ALJ improperly relied on the opinions of the non-examining state agency physician, Dr. Melvin, and the consultative examiner, Dr. Eggerman.  (Doc. 13 at 15).  Specifically, Plaintiff argues that Dr. Melvin's opinion was based on a "very thin" read of the record because he did not examine her like Dr. Dreyer did.  *Id.* at 16.  Plaintiff further contends Dr. Eggerman's opinions do not vary greatly from those of Drs. Dreyer and Deardorff, and as a such, the ALJ had no reason to  disregard Dr. Dreyer's medical opinions.  As noted by the Commissioner, Plaintiff's argument is somewhat ambiguous.  Notably, the ALJ's decision does not indicated that he relied on Dr. Melvin's finding and explicitly found that "the most complete assessment of the claimant's mental capabilities by any directly examining source has come from David A. Eggerman."  (Tr. 27).  The ALJ's finding in this regard is substantially supported.

Dr. Eggerman examined Plaintiff in December 2008. (Tr. 994-99). Dr. Eggerman assessed Plaintiff with a GAF score of 60, which indicated moderate symptoms. (Tr. 998). He noted that Plaintiff's thought processes were logical, coherent, and goal oriented. (Tr. 997). Dr. Eggerman also noted some abnormalities in Plaintiff's affect and mood. (Tr. 997). With respect to functional limitations, Dr. Eggerman concluded that Plaintiff had moderate limitations interacting appropriately with the public, supervisors, and co-workers; responding appropriately to work pressures in usual work settings; and handling changes in routine work settings. (Tr. 999). Dr. Eggerman explained Plaintiff only had mild limitations understanding, remembering and carrying out short, simple and detailed instructions, and making judgments on simple work-related decisions. (Tr. 998-99).

As noted above, the ALJ determined that Dr. Eggerman's assessment was more comprehensive than any another medical source, the ALJ noted that Dr. Eggerman's opinion was consistent with the overall record. (Tr. 27). Dr. Eggerman examined Plaintiff in December 2008 and provided the most recent assessment of Plaintiff' mental abilities. Dr. Eggerman's findings were also consistent with the assessment of Dr. Melvin and with Plaintiff's testimony and reported activities as detailed further below. Furthermore, other than asserting that Dr. Eggerman's finding are "generally consistent" with those of Dr. Dreyer and therefore Dr. Dreyer's findings should have been credited; Plaintiff's fails to assert that Dr. Eggerman's opinion is not supported by the record and/or explain how the ALJ erred in crediting Dr. Eggerman's opinion. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal....").

In sum, it is the duty of the ALJ to resolve any conflict among the evidence and weigh the medical source opinions. *See Mullins v. Secy. Of Health and Human Servs.*, 836 F.2d 980, 984 (6th Cir.1987).  Where, as here, there is a conflict in the medical evidence as to plaintiff's functioning, it is the ALJ's function to resolve such conflicts. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary of H.H.S.*, 823 F.2d 922, 928 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). The ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  *See also Boyle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Tyra v. Secretary of H.H.S.*, 896 F.2d 1024, 1028 (6th Cir. 1990).  Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform work related activities.  As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence.

### 2. Consideration of Obesity

Plaintiff's next assignment of error asserts that the ALJ failed to properly consider the effects of her obesity on her musculoskeltal conditions.  SSR 02–1p provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 02–1p.  Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."  *Id.*  Thus, SSR 02–1p recognizes that obesity may affect an individual's ability to perform the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, as well as an individual's ability to perform

postural functions such as climbing, balancing, stooping, and crouching.  SSR 02–01p, 2000 WL 628049, at *6. SSR 02–1p does not mandate a particular mode of analysis for an obese disability claimant.  *Bledsoe v. Barnhart,* 165 F. App'x 408, 412 (6th Cir.2006). Rather, the Ruling simply recognizes that "obesity, in combination with other impairments, 'may' increase the severity of the other limitations." *Id.* at 418 (quoting SSR 02–1p).

Here, the ALJ determined that Plaintiff's obesity was a severe impairment.  (Tr. 21).  As noted by the Commissioner, after discussing Plaintiff's impairments, the ALJ explained that she was incorporating by reference "the discussion and analysis of the medical record contained in the prior administrative law judge decision."  (Tr. 24).  In the February 2007 decision, the ALJ explained that Plaintiff was obese at 5 feet 5 inches and 250 pounds.  (Tr. 53-54).  The ALJ further noted that Plaintiff's obesity had not manifested itself in any other physical problems.  (Tr. 53-54).  Therefore, the ALJ found that Plaintiff could still work despite her impairments.  (Tr. 54).  The ALJ's decision, when read together with the previous decision, indicates that he properly evaluated Plaintiff's obesity.

Moreover, other than asserting that the ALJ failed to consider the effects of her disability, Plaintiff again fails to develop this argument in any meaningfully way.  Notably Plaintiff does not provide any evidence that her obesity resulted in any functional limitations. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) ("The absence of further elaboration on the issue of obesity [by the ALJ] likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity.").  As noted by the Commissioner, the record shows that Plaintiff's weight did not, in fact, affect her ability to work.  As detailed above, Plaintiff

12

held a full-time job from February 2004 until July 2005, during which time she was obese. (Tr. 360, 612, 1105-06). In light of the foregoing, the undersigned finds that the ALJ's decision is substantially supported in this regard.

   *3. Credibility*

   Plaintiff further argues that the ALJ improperly evaluated her credibility. Specifically, Plaintiff contends that the ALJ failed to follow the credibility analysis set forth in SSR 96-7p, and instead inappropriately focused on Plaintiff's "well-established history of non-complained." (Tr. 24).

   It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to

work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

Additionally, the Sixth Circuit has explained that an ALJ can consider evidence without discussing it in his written decision. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006); see also *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004) ("SSR 96-7p only requires that the ALJ consider other employees' observations of her. The ALJ's failure to discuss those observations does not indicate that they were not considered.").

Contrary to Plaintiff contentions, the undersigned finds that the ALJ's credibility evaluation properly considered the factors outlined in SSR 96-7p.  The ALJ concluded that Plaintiff's treatment history was inconsistent with her claims of total disability.  (Tr. 24).  As noted by Plaintiff, the ALJ did cite to Plaintiff's history of non-compliance with physical therapy, occupational therapy and medical appointments (Tr. 24).  Notably, despite being advised of the importance of physical therapy (Tr. 520), Plaintiff continued to miss appointments.  (Tr. 250, 820, 821, 822) and was a "no show" at several of her occupational therapy appointments.   (Tr. 423, 429, 438).   However, such non-compliance was properly considered by the ALJ.  See SSR 96-7p (an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  SSR 96-7p further states that an individual's attempt "to follow treatment once it is prescribed lends support to an individual's allegations." *Id*

The ALJ noted that Plaintiff continued to smoke, despite being advised that smoking would delay her healing process of her left foot fracture.  (Tr. 24).  The ALJ also found that Plaintiff has shown poor motivation to work.  Notably, Plaintiff alleged that she stopped working because she had difficulties sleeping and was not motivated. (Tr. 176).  However, Plaintiff also reported that she does not like to leave her home because of her mental impairments, yet she also stated she could not leave her home because her daughters needed 24 hour supervision and she did not want to leave them alone.  (Tr. 55, citing Tr. 575 ).

The ALJ also noted that Plaintiff's reported activities were inconsistent with her claims of disabling depression and anxiety.  (Tr. 25).  Notably, Plaintiff testified that she

reads, goes to bingo, does housework and attends doctors appointment. The ALJ also noted that one doctor's note indicated that she played pool once a week. The ALJ properly considered that Plaintiff engaged in a variety of daily activities, and it was appropriate for her to consider this factor in making her credibility finding.  *See Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible.  The ALJ's credibility finding is entitled to deference and thus should be affirmed.  *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

### 4. Vocational Errors

Plaintiff contends that the testimony of the vocational expert conflicts with descriptions of the jobs identified by the Dictionary of Occupational Titles ("DOT"). Specifically, at step four of the sequential evaluation, the ALJ determined that Plaintiff was not disabled because she could perform her past relevant work as a cashier.  (Tr. 27).  Plaintiff argues that the ALJ's finding was in error because she failed to resolve the conflict between the vocational expert's testimony and the DOT.

16

As noted above, the vocational expert testified that a hypothetical individual with Plaintiff's functional limitations could perform her previous relevant work as a cashier and other sedentary jobs including, security system monitor, stock clerk, hand packer and general office clerk.  Plaintiff argues, however, that the DOT listing for Plaintiff's cashier job is described as being performed at the "light" level.  However,  at the administrative hearing, the vocational expert testified that Plaintiff could perform the cashier job at a sedentary level, "same skills just little different location."  (Tr. 1159). Plaintiff contends that the ALJ did not ask the vocational expert, nor did he identity, a DOT listing for light cashier work, nor is there any evidence in his testimony that resolves the conflict between his assertion that the cashier job can be performed at a sedentary level and the DOT listing to the contrary.  As such, Plaintiff maintains that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence.   Plaintiff's contention lacks merit.

The ALJ has a duty under Social Security Ruling 00–4p to develop the record and ensure there is consistency between the VE's testimony and the DOT and "inquire on the record, as to whether or not there is such consistency."  SSR 00–4p.  Where, the ALJ questions the VE and the VE testifies that there is no conflict with the DOT, the Sixth Circuit has held that the ALJ is under no further obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to cross-examine the VE.  See *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir.2009).  The ALJ is only required to develop the record further where the conflict between the DOT and the VE's testimony is apparent.  *Id.*; See also SSR 00–4p ("If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.").

Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the jobs identified above. (Tr. 56–57). The ALJ inquired, "And your testimony is consistent with the DOT?" The VE responded, "Yes." (Tr. 1065). Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir.2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if his testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding that plaintiff could perform her previous job as a cashier.

Furthermore, as noted by the Commissioner, even assuming that she could not perform her past job as a cashier, the ALJ's decision would still be supported by substantial evidence because the ALJ made an alternate step five finding and there was no conflict (nor does Plaintiff allege a conflict) between the vocational expert's testimony and the DOT. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled."). Here, based

upon Plaintiff's limitations as outlined in the ALJ's RFC assessment, the vocational expert identified several unskilled sedentary jobs that Plaintiff could perform including stock clerk, security system monitor, hand packer, assembler, and office general clerk. (Tr. 1160-61).  The vocational expert also identified an additional job that Plaintiff could perform if she needed a sit-stand option.  (Tr. 1162-63).  In light of the foregoing, the undersigned finds that Plaintiff's assignment of error should be overruled as the ALJ's step-five determination is substantially supported.

    *5. The ALJ did not Error as a Matter of Law*

    Last, the undersigned notes that Plaintiff contends that the ALJ erred as a matter of law by denying Plaintiff's applications.  Notably, in the previous decision, the ALJ determined that Plaintiff's mental impairments would limit her to a job that did not require much interaction with others. (Tr. 54).  Plaintiff appears to assert that this finding was incorporated into the ALJ's current decision, and based upon the testimony of the vocational expert, such a limitation would preclude all work activity.  Plaintiff's contention misinterprets the ALJ's decision.

    At step-two of the sequential evaluation, the ALJ determined that Plaintiff has the following severe impairments: "history of right elbow epicondylitis, history of left rotator cuff tear, obesity, recently developed lower lumbar facet arthropathy, left knee injury in April 2007 with corrective surgery, and a left foot fracture in 2008."  (Tr. 21)  The ALJ's step-two analysis further states: "[t]he prior determination that the claimant has a severe psychological impairment remains unchanged."  (Tr. 21).  Thus, this statement clearly refers only to the ALJ's step-two finding.

    Moreover, the ALJ's current RFC does not preclude interaction with others, finding that Plaintiff "has more than slight limitation interacting appropriate with the

19

public, supervisors, and coworkers, and responding appropriating to usual work settings or changes in a routine work setting, but is still able to function satisfactorily in these areas.  (Tr. 23).  As detailed above, this finding is substantially supported by the evidence of record, including the assessment of Dr. Eggerman.  Accordingly, Plaintiff's assignment of error should be overruled in this regard.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

  _s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VALERIE BELL,                                              Case No. 1:12-cv-483

          Plaintiff,                                   Spiegel, J.
                                                          Bowman, M.J.
    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.


**NOTICE**

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).